Paxton R. Guymon (8188)
**MILLER MAGLEBY & GUYMON, P.C.**
170 South Main, Suite 350
Salt Lake City, Utah 84101
Telephone: (801) 363-5600
Facsimile: (801) 363-5601

Terence P. Ross
Amy E. Barrier
**GIBSON, DUNN & CRUTCHER, LLP**
1050 Connecticut Ave., N.W.
Washington, D.C. 20036
Telephone: (202) 055-8500

Attorneys for Plaintiff

---

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **1-800 CONTACTS, INC.**, a Delaware corporation,<br><br>       Plaintiff,<br>vs.<br><br>**COASTAL CONTACTS, INC.**,<br><br>       Defendant. | **COMPLAINT**<br><br>Judge Dale A. Kimball<br>DECK TYPE: Civil<br>DATE STAMP: 03/18/2004 @ 13:08:51<br>CASE NUMBER: 2:04CV00249 DAK |

Plaintiff 1-800 Contacts, Inc. ("1-800 Contacts" or "Plaintiff"), by their undersigned attorneys, for their Complaint allege against Defendant, Coastal Contacts, Inc. ("Coastal Contacts" or "Defendant") as follows:

## NATURE OF THE ACTION

1. This action is for permanent injunctive relief, damages, and attorney's fees and costs arising out of Defendant's acts of trademark infringement, unfair competition, false designation of origin, trademark dilution, copyright infringement, and contributory copyright infringement.

## THE PARTIES

2. Plaintiff 1-800 Contacts was incorporated in Utah in 1995 and is presently incorporated in Delaware. Its principle place of business is in Draper, Utah. 1-800 Contacts is the world's largest contact lens distributor, having delivered over 10 million orders to more than 5 million customers in the last seven years. 1-800 Contacts is a publicly traded company listed on NASDAQ.

3. 1-800 Contacts revolutionized the way in which consumers purchase contact lenses by providing easy and convenient methods of purchase via its Internet website, located at http://www.1800Contacts.com, as well as through its toll-free telephone number, "1-800 Contacts," and by mail.

4. Upon information and belief, Defendant Coastal Contacts is a Canadian corporation with its principle place of business in Vancouver, British Columbia. Defendant Coastal Contacts sells contact lenses through its Internet website, located at http://www.coastalcontacts.com, as well as by telephone and mail, and endeavors to compete with the Plaintiff.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action under 15 U.S.C. §1121, 28 U.S.C. §1331, and 28 U.S.C. § 1338(a) and (b). This Court has supplemental jurisdiction

2

over the state law claims pursuant to 28 U.S.C. §1367(a) because those claims are so related to the federal claims brought herein as to form part of the same case or controversy.

6. Venue is proper in this district under 28 U.S.C. §1391(b) and 28 U.S.C. §1400(a) because Defendants reside in this district within the meaning of 28 U.S.C. §1391(c).

7. Coastal Contacts is subject to personal jurisdiction in this district because it practices the unlawful conduct complained of herein, in part, within the State of Utah and this district; because the unlawful conduct complained of herein causes injury, in part, within the State of Utah and this district; and because Coastal Contacts regularly does or solicits business, engages in other persistent courses of conduct, and/or derives substantial revenue from goods used or consumed or services rendered within the State of Utah and this district.

8. Moreover, Coastal Contacts regularly and systematically has directed electronic activity into the State of Utah with the manifested intent of engaging in business within the State and that activity has resulted in causes of action cognizable within the State. Coastal Contacts' actions in this regard include causing the regular placement of pop-up advertisements upon the screens of numerous PCs within the State; the offering of contact lens products to PC users within the State, many of whom purchased such products; and entry into contracts with residents of the State. Upon information and belief, these actions by Coastal Contacts were the means by which actual business was conducted by Coastal Contacts within the State and which resulted in cognizable causes of action within the State.

**PLAINTIFF'S TRADEMARKS**

9. On July 8, 1999, 1-800 Contacts filed to register the service mark "1-800 CONTACTS" with the United States Patent and Trademark Office ("USPTO") for use in connection with retail sales via electronic retailing services using a computer, by mail order and by telephone order, for the field of contact lenses and related products. On January 21, 2003, the

3

USPTO issued a registered service mark. *See* Federal Trademark Reg. No. 2,675,866 (appended hereto as Exhibit A).

10. On August 29, 2000, 1-800 Contacts registered the service mark "WE DELIVER. YOU SAVE." with the USPTO for use in connection with retail sales via electronic retailing services using a computer, by mail order and by telephone order, for the field of contact lenses and related products. On April 9, 2002, the USPTO issued a registered service mark. *See* Federal Trademark Reg. No. 2,558,233 (appended hereto as Exhibit B.)

11. On October 2, 2000, 1-800 Contacts registered the service mark "1-800 Contacts" and associated design logo with the USPTO for use in connection with retail sales via electronic retailing services using a computer, by mail order and by telephone order, for the field of contact lenses and related products. On July 1, 2003, the USPTO issued a registered service mark (Federal Trademark Reg. No. 2,731,114).

12. 1-800 Contacts has continuously promoted and advertised the above-described trademarks in interstate commerce in the United States and throughout the world since at least as early as July 1995. Plaintiff has spent significant sums promoting these marks over the last seven years.

13. Through Plaintiff's actions, and because of widespread and favorable public acceptance and recognition, the Plaintiff's trademarks have become a distinctive designation of the source of origin of Plaintiff's goods and services. The Plaintiff's trademarks have become uniquely associated with, and hence identify, the Plaintiff. These marks are an asset of incalculable value as a symbol of the Plaintiff, its quality services, and its goodwill.

14. Accordingly, the Plaintiff's trademarks have developed secondary meaning and are famous marks.

## PLAINTIFF'S COPYRIGHT

15. Plaintiff is the sole owner of the 1-800Contacts.com website and holds a valid copyright on the 1-800Contacts.com website.

16. Plaintiff registered its copyright to the 1-800Contacts.com website with the Copyright Office of the United States Library of Congress ("Copyright Office") on October 2, 2000. *See* Certificate of Registration No. VA-1-032-662 (appended hereto as Exhibit C).

17. Plaintiff grants visitors to its website a non-exclusive, non-transferable, limited right to access, use and display the website and its content for the viewers' personal, non-commercial use. Visitors are explicitly prohibited from modifying any of the website content or the manner in which the content is displayed.

## FACTUAL BACKGROUND

A. **The Internet And The World Wide Web**

18. The Internet is a global network of millions of interconnected computers. The World Wide Web is a portion of the Internet especially suited to displaying images and sound, in addition to text. Much of the information on the World Wide Web is stored in the form of "webpages," which can be accessed through a computer connected to the Internet (available through commercial Internet service providers or "ISPs"), and viewed using a computer program called a "browser," such as Microsoft Internet Explorer and Netscape Navigator. "Websites" are locations on the World Wide Web containing a collection of webpages. A webpage is identified by its own unique Uniform Resource Locator ("URL") (*e.g.*, http://www.1800contacts.com), which ordinarily incorporates its site's "domain name" (*e.g.*, 1-800 Contacts).

19. Internet use in the United States has grown substantially in the last few years. More than half of the nation, roughly 53.9 million households, are now online. Internet use in

the United States continues to grow at an astonishing rate of two million new Internet users per month.

20. The Internet has revolutionized commercial sales activities in the United States and throughout the world. Using the Internet, consumers now have the power to comparatively shop multiple, worldwide vendors without leaving the comforts of their homes.

21. Among Internet users in the United States, 39 percent currently use the Internet to make online purchases.

22. As a result, Internet sales, or "e-commerce" reached an estimated $48.28 billion by 2000.

**B.   The Business Of Plaintiff 1-800 Contacts**

23. Plaintiff 1-800 Contacts has established and operates a website for the purpose of advertising and selling contact lenses and related products. Plaintiff prominently displays its "1-800 Contacts" and "We Deliver. You Save." trademarks on its website. Plaintiff also sells its products through its easy to remember toll-free "1-800 Contacts" telephone number and by mail. Plaintiff is recognized as the leading distributor of contact lenses.

24. 1-800 Contacts has achieved such success in part because 1-800 Contacts offers consumers a simple, convenient, and efficient method for purchasing contact lenses. In support of this goal, 1-800 Contacts has invested in excess of $45 million in its contact lens inventory. In addition, 1-800 Contacts has invested substantially in the information systems and Internet infrastructure necessary to support customer sales.

25. Plaintiff derives a substantial portion of its sales from e-commerce. Therefore, great care and enormous efforts are undertaken by the Plaintiff to present its webpage content with a specific "look and feel" that will encourage site visitors to remain at the site, to purchase Plaintiff's products and to return to Plaintiff's website for future purchases. Plaintiff deliberately

designs its website to display and advertise its products and related information in a manner that will be visually attractive and easy to navigate for site visitors.

26. Plaintiff offers users the ability to personalize the services available on or through its website. For example, customers may "store" their purchase details, such as their contact lens prescription or billing information, by registering on Plaintiff's website.

27. As a result of these design efforts, millions of customers have developed strong relationships with 1-800 Contacts, and return to the 1-800Contacts.com website repeatedly to purchase their contact lenses.

28. 1-800 Contacts uses its website to advertise and to sell exclusively its products. Plaintiff does not permit other advertising on its website. Moreover, the Plaintiff's website does not utilize pop-up advertisements.

## DEFENDANT'S ACTIONS

### C. The Business of Coastal Contacts

29. Defendant Coastal Contacts is in the business of selling contact lenses via its Internet website, located at http://www.coastalcontacts.com by telephone and by mail. Upon information and belief, Coastal Contacts endeavors to compete with the Plaintiff by engaging in aggressive advertising schemes that target customers visiting Plaintiff's website.

30. Upon information and belief, beginning in at least the fall of 2002, Coastal Contacts, without Plaintiff's authorization, caused Coastal Contacts advertisements to appear over top of some viewers' copies of the 1-800Contacts.com webpage. These unauthorized advertisements changed the appearance of the 1-800Contacts.com website.

31. An example of such an unauthorized Coastal Contacts advertisement, as placed onto the 1-800Contacts.com web page, is set forth below:

7



32.     These unauthorized Coastal Contacts advertisements alter the appearance of the 1-800Contacts.com webpage. These unauthorized modifications also constitute a derivative work of the 1-800Contacts.com website.

33.     Upon information and belief, Coastal Contacts has also, without Plaintiff's authorization, caused Coastal Contacts advertisements to appear over top of some viewers' copies of the 1-800 Contacts, Inc.'s "CTAC" webpage on the Yahoo! financial site.

E.   **Harm To Plaintiff**

34.     Since at least the fall of 2002, Coastal Contacts has specifically targeted, and continues to target, the Plaintiff's website for the delivery of unauthorized pop-up advertising.

35. Upon information and belief, Coastal Contacts has already delivered hundreds of thousands of unauthorized pop-up advertisements to Plaintiff's website.

36. Plaintiff has not given Coastal Contacts permission or a license to place advertisements on to the 1-800Contacts.com website or copies of the webpage.

37. Coastal Contacts is not licensed or otherwise authorized to use, alter, modify, change the appearance of, or add to the 1-800Contacts.com website or copies of the webpage, nor is Coastal Contacts licensed to create derivative works based on the 1-800Contacts.com website.

38. All of the pop-up advertisements that Coastal Contacts has displayed on the Plaintiff's website have been displayed without the authorization or permission of the Plaintiff.

39. Upon information and belief, Coastal Contacts knew or should have known of Plaintiff's rights in its trademarks and the 1-800Contacts.com website.

40. Upon information and belief, Coastal Contacts nevertheless caused advertisements to be added on to viewers' copies of the 1-800Contacts.com website.

41. Upon information and belief, Coastal Contacts caused these advertisements to be added on to viewers' copies of the 1-800Contacts.com website with the intent to confuse and deceive customers as to the source of Coastal Contact's services and to trade upon the goodwill and substantial customer recognition associated with the 1-800 Contacts marks.

42. The Coastal Contacts advertisements on the 1-800Contacts.com website blur the Plaintiff's trademarks and dilute the marks' ability to identify Plaintiff as a source of goods and services.

43. Plaintiff's current customers have been and will likely continue to be confused about the origin and sponsorship of Coastal Contacts services. Potential customers, as well as members of the general public, are also likely to be confused.

44. Confusion regarding Defendant Coastal Contact's implied affiliation with Plaintiff has damaged and will continue to damage Plaintiff's reputation and customer relationships.

45. Upon information and belief, Coastal Contacts caused these advertisements to be added on to viewers' copies of the 1-800Contacts.com website with the intent to infringe and to cause viewers to infringe Plaintiff's copyright in the website. Alternatively, Coastal Contacts acted with reckless disregard for Plaintiff's copyright.

46. In the short term, Coastal Contacts' actions steal customers from Plaintiff, erode the attractiveness of shopping on the Plaintiff's website and disrupt Plaintiff's efforts to create a "user friendly" site. In the long term, if left unchecked, Coastal Contacts' actions imperil the economic viability of the Plaintiff's business.

47. Coastal Contacts' actions have caused damage and irreparable injury to the Plaintiff. Further damage and irreparable injury will result if Coastal Contacts is allowed to continue to violate Plaintiff's rights.

48. Plaintiff has no adequate remedy at law.

## FIRST CLAIM FOR RELIEF
## FOR FEDERAL TRADEMARK INFRINGEMENT

49. Paragraphs 1 through 48 are repeated and realleged as if fully set forth herein.

50. Plaintiff owns valid, federally registered trademarks entitled to protection under the Lanham Act.

51. Coastal Contacts' unauthorized use of Plaintiff's marks in commerce has caused and is likely to continue to cause consumer confusion.

52. Coastal Contacts' conduct constitutes trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

## SECOND CLAIM FOR RELIEF
## FOR UNFAIR COMPETITION UNDER THE LANHAM ACT

53. Paragraphs 1 through 52 are repeated and realleged as if fully set forth herein.

54. Plaintiff owns valid common law and federally registered trademarks entitled to protection under the Lanham Act.

55. Coastal Contacts' unauthorized use of the Plaintiff's marks in commerce has caused and is likely to continue to cause consumer confusion as to the origin or sponsorship of Defendant Coastal Contacts' products and services and the association of Coastal Contacts' products and servcies with Plaintiff or Plaintiff's products and services.

56. Coastal Contacts' conduct constitutes a false designation of origin and a false description and representation, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

### THRID CLAIM FOR RELIEF
### FOR COMMON LAW UNFAIR COMPETITION

57. Paragraphs 1 through 56 are repeated and realleged as if fully set forth herein.

58. Coastal Contacts' unauthorized use of the Plaintiff's marks in commerce has caused and is likely to continue to cause consumer confusion and induce consumers to believe that the Plaintiff and Coastal Contacts or their products or services are affiliated.

59. Coastal Contacts has misappropriated Plaintiff's marks, reputation, and good will through their actions.

60. Coastal Contacts has acted deliberately and with bad faith.

61. Coastal Contacts has engaged in unfair methods of competition in violation of the common law.

62. As a result of Coastal Contacts' conduct, Plaintiff is suffering, and will continue to suffer, damage to its reputation because of consumer confusion as to the origin or sponsorship of Defendant Coastal Contacts' products and services and the association of Defendant Coastal Contacts' products and services with Plaintiff or Plaintiff's products and services, and loss of profits.

## FOURTH CLAIM FOR RELIEF
## FOR FALSE DESIGNATION OF ORIGIN

63. Paragraphs 1 through 62 are repeated and realleged as if fully set forth herein.

64. Coastal Contacts' conduct constitutes false designation of origin and false description and representation, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

## FIFTH CLAIM FOR RELIEF
## FOR DILUTION UNDER THE FEDERAL TRADEMARK DILUTION ACT

65. Paragraphs 1 through 64 are repeated and realleged as if fully set forth herein.

66. Plaintiff owns valid common law and federally registered trademarks entitled to protection under the Lanham Act. These marks are famous within the meaning of 15 U.S.C. § 1125(c).

67. Coastal Contacts' pop-up advertising scheme has the effect of blurring Plaintiff's trademarks and thereby diluting the marks' ability to identify Plaintiff as a source of goods or services.

68. Coastal Contacts has made unauthorized commercial use of Plaintiff's marks in commerce.

69. Coastal Contacts' conduct has diluted the distinctive quality of Plaintiff's famous marks in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

## SIXTH CLAIM FOR RELIEF
## COPYRIGHT INFRINGEMENT

70. Paragraphs 1 through 69 are repeated and realleged as if fully set forth herein.

71. Plaintiff owns a valid copyright in the 1-800Contacts.com website.

72. Plaintiff has registered this copyright with the United States Copyright Office.

73.     Coastal Contacts' conduct, including causing advertisements to be added on to or over top of viewers' copies of the 1-800Contacts.com web page violates Plaintiff's exclusive rights in its copyright.

74.     Coastal Contacts' conduct constitutes an unauthorized display of the Plaintiff's copyrighted work and the unauthorized preparation of a derivative work based upon the copyrighted work in violation of Plaintiff's exclusive rights in its copyright.

75.     Coastal Contacts' conduct constitutes copyright infringement under the Federal Copyright Act, 17 U.S.C. §§101, *et seq.*

## SEVENTH CLAIM FOR RELIEF
## CONTRIBUTORY COPYRIGHT INFRINGEMENT

76.     Paragraphs 1 through 75 are repeated and realleged as if fully set forth herein.

77.     Plaintiff owns a valid copyright in the 1-800Contacts.com website.

78.     Plaintiff has registered this copyright with the United States Copyright Office.

79.     Coastal Contacts has knowingly (or with reckless disregard for Plaintiff's rights) induced, caused, or materially contributed to conduct by third parties, which violates Plaintiff's exclusive rights in its copyright.

80.     Coastal Contacts' conduct facilitates the unauthorized and infringing public display of the Plaintiff's copyrighted work by third parties as well as the creation of unauthorized derivative works by those same third parties. Coastal Contacts has engaged in this pop-up advertising scheme knowingly, or with reckless disregard, that it was inducing, causing or materially contributing to conduct by third parties that infringed the Plaintiff's exclusive rights in its copyright.

81.     Defendants' conduct constitutes contributory copyright infringement under the Federal Copyright Act, 17 U.S.C. §§101, *et seq.*

## EIGHTH CLAIM FOR RELIEF
## TORTIOUS INTERFERENCE
## WITH PROSPECTIVE ECONOMIC ADVANTAGE

82. Paragraphs 1 through 81 are repeated and realleged as if fully set forth herein.

83. Many of the Plaintiff's customers regularly purchase contact lenses from Plaintiff's website. It is probable that such customers and others will continue to visit Plaintiff's website and purchase Plaintiff's goods and services in the future. Upon information and belief, Defendant was aware of the existance of Plaintiff's reasonable expectancy of future transactions with Plaintiff's returning customers.

84. Absent Defendant's intentional and improper interference through its pop-up advertising scheme, it is reasonably certain that Plaintiff would realize additional sales from existing customers and/or new customers. Defendant's pop-up advertising scheme, however, damages Plaintiff.

85. Defendant's pop-up advertising scheme constitutes improper interference with the Plaintiff's prospective economic advantage.

WHEREFORE, Plaintiff prays for judgment in its favor and against Defendant as follows:

A. A preliminary and a permanent injunction, prohibiting Defendant, its agents, servants, employees, officers, attorneys, and all other persons in active concert or participation with them, from:

1. placing, or causing any other entity to place, advertisements of any kind on any copy of the 1-800Contacts.com website, without the express consent of the Plaintiff;

2. altering or modifying, or causing any other entity to alter or modify, any copy of the 1-800Contacts.com website in any way, including its appearance or how it is displayed;

3. infringing, or causing any other entity to infringe, Plaintiff's copyright;
4. making any designations of origin, descriptions, representations, or suggestions that Plaintiff is the source, sponsor or in any way affiliated with Defendant Coastal Contacts' website and services;
5. acting in any manner that causes Defendant's products, services, website, or advertisements to be in any way associated with Plaintiff's products, services, or website, including, but not limited to, any means of marketing, advertising, or agreements with third parties likely to induce the belief that Defendant or Defendant's website, advertisements, products, or services are in any way associated, connected, or affiliated with, or licensed or authorized by Plaintiff;
6. infringing, or causing any other entity to infringe, Plaintiff's trademarks and/or service marks rights;
7. unfairly designating the origin of Defendant Coastal Contacts' website and services, or otherwise creating confusion regarding the origin of Defendant Coastal Contacts' website and services;
8. unfairly competing with Plaintiff in any manner whatsoever;
9. acting, or causing another entity to act, in any manner likely to dilute, tarnish, or blur the distinctiveness of the 1-800 Contacts marks;
10. causing a likelihood of confusion or injuries to Plaintiff's business reputation; and
11. interfering with Plaintiff's reasonable business expectations.

B. An order directing Defendant, its agents, servants, employees, franchisees, licensees, attorneys, and all others in active concert or participation with Defendant to deliver to Plaintiff any agreements between Defendant and any other

party or parties that relate to the use of any means by which advertisements are added on to the 1-800Contacts.com website or viewers' copies thereof;

C. An order directing Defendant to file with this Court and serve on Plaintiff within thirty (30) days after the service of the injunction, a report in writing, under oath, that describes in detail the manner and form in which Defendant has complied with the orders of this Court;

D. An order directing an accounting to determine all gains, profits, savings, and advantages obtained by Defendant as a result of its wrongful actions;

E. Awarding restitution to Plaintiff of all gains, profits, savings, and advantages obtained by Defendant as a result of its wrongful actions;

F. Awarding Plaintiff all damages caused by Defendant's wrongful actions;

G. Awarding Plaintiff treble the amount of its damages, together with the costs of this suit, including reasonable attorneys' fees and expenses and prejudgment interest;

H. Awarding Plaintiff an amount sufficient to conduct a corrective advertising campaign to dispel the effects of Defendant's wrongful conduct and confusing and misleading advertising;

I. An order directing Defendant to post on its website corrective advertising in a manner and form to be established by the Court;

J. Awarding Plaintiff punitive damages in an amount sufficient to deter other and future similar conduct by Defendant and others; and

K. Granting Plaintiff such other and further relief as the Court may deem just.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues and claims so triable.

DATED:   March 19, 2004

                                       MILLER MAGLEBY & GUYMON P.C.

                                       By: _____
                                              Paxton Guymon (#8188)

Attorneys for Plaintiff 1-800 Contacts, Inc.

Of Counsel:

Terence P. Ross
Amy E. Barrier
GIBSON, DUNN & CRUTCHER, LLP
1050 Connecticut Ave., N.W.
Washington, D.C. 20036
(202) 955-8500

70278960_1.DOC

Exhibits/ Attachments to this document have **not** been scanned.

Please see the case file.